**Pennsylvania Prevailing Wage Act**

KLEIMAN, Deputy Attorney General, SHENKIN, Deputy Attorney General, and STAHL, Attorney General, July 25, 1962.—You have requested our opinion as to whether the Pennsylvania Industrial Development Authority, created under the Act of May 15, 1956, P. L. (1955) 1609, sec. 1, et seq., 73 PS §301, et seq., and local industrial development agencies must comply with the wage requirements of the Pennsylvania Prevailing Wage Act of August 15, 1961, P. L. 987, 43 PS §165-1, et seq.

Sections 3, 4 and 5, of the Pennsylvania Prevailing Wage Act provide that any *public body* which is a party to a contract in excess of $2,000 for any *public work* must ascertain from the Secretary of Labor and Industry the general prevailing minimum wage rate in the locality for each craft or classification of workmen. The contract must specify such rate, and not less than

the specified rate must be paid to all workmen employed in public work.

As defined in section 2, " *'Public body'* means the Commonwealth of Pennsylvania, any of its political subdivisions, any authority created by the General Assembly of the Commonwealth of Pennsylvania, and any instrumentality or agency of the Commonwealth of Pennsylvania", and " *'Public work'* means construction, reconstruction, demolition, alteration and/or repair work, maintenance work, done under contract and paid for in whole or in part out of the funds of a public body, except work performed under a rehabilitation program."

It is clear that the Pennsylvania Prevailing Wage Act makes mandatory the payment to workmen of the prevailing wage rate under contracts entered into by the Commonwealth, or its political subdivisions or other public agencies, for the construction, alteration or repair of any public work or improvement when the contract is in excess of $2,000.

Section 3 of the act creating the Pennsylvania Industrial Development Authority (PIDA), 73 PS §303, provides, in pertinent part, that:

"(a) The term 'Authority' shall mean the public body corporate and politic created by this act . . .

"(g) The term 'industrial development agency' shall mean any incorporated organization, foundation, association or agency, regardless of the particular name, and to whose members or shareholders *no profit* shall enure, which shall have as its primary function the promotion, encouragement and development of *industrial and manufacturing* enterprises in a critical economic area." (Italics supplied.)

The fundamental purpose of PIDA is expressed in the power granted by section 5 (h) of the act:

"To make, upon proper application of industrial development agencies, loans to such industrial develop-

ment agencies of moneys held in the Industrial Development Fund for industrial development projects in critical economic areas and to provide for the repayment and redeposit of such allocations and loans in the manner hereinafter provided; . . ."

The primary objective of PIDA is, therefore, to provide loans for the purpose of assisting critical economic areas in the industrial and manufacturing field. The loan application requirements extensively set forth in section 7 of the act provide a firm basis for securing the loan when made, and section 6 outlines the conditions under which the loan is granted.

PIDA does *not* undertake the construction, reconstruction, alteration or repair of any of the projects, and, therefore, does not perform any "public work" which might otherwise make it subject to the Pennsylvania Prevailing Wage Act. Furthermore, PIDA is not a "party to a contract" within the contemplation of the Pennsylvania Prevailing Wage Act. It follows that this act has no application to the operations of PIDA.

You have also asked us to determine the effect of the Pennsylvania Prevailing Wage Act on the various local industrial development agencies through which PIDA functions.

Under the statutory design of the Pennsylvania Industrial Development Authority Act, PIDA functions as a financing agency, and the public purposes of the act are accomplished through industrial development agencies. As quoted above, section 3 (g) of the act defines the term "industrial development agency" as an incorporated nonprofit organization whose primary function is to promote, encourage and develop industrial and manufacturing enterprises in critical economic areas.

Shortly after PIDA was created, the General Assembly in the same session enacted a companion piece

of legislation. This was the Industrial Development Assistance Law of May 31, 1956, P. L. (1955) 1911, 73 PS §351, et seq., under which the Department of Commerce is authorized (sec. 5, 73 PS §355) to make matching grants to properly designated "industrial development agencies" for the purpose of making studies, surveys and investigations, compiling data and statistics and carrying out planning and promotional programs.[1] Section 3 of this act, 73 PS §353, defines the term "industrial development agency" to mean "any nonprofit corporation, organization, association or agency" which has been officially designated by a certain proportion of the political subdivisions within the county as the agency authorized to receive grants from the Department of Commerce under the act.

It is fairly obvious from the statutory provisions above that the industrial development agencies through which PIDA functions are essentially private local nonprofit agencies. Our investigation as to the actual facts confirm this. These agencies have been privately organized and have obtained their initial funds by broad-based community drives. In no case brought to our attention has an industrial development agency, receiving funds under either of the 1956 Acts, been organized by any political subdivision of the Commonwealth. We are aware of the fact that certain

---

[1] Counties of the third to the eighth class and other political subdivisions have recently been empowered to make grants to industrial development agencies for the purposes set forth in the Industrial Development Assistance Law. See section 1985 of The County Code of August 9, 1955, P. L. 323, added July 3, 1957, P. L. 474, 53 PS §1985; clause 64, sec. 2403, of The Third Class City Code of August 7, 1961, P. L. 956, 53 PS §37403.64; clause 69, sec. 1202, of The Borough Code of May 4, 1927, P. L. 519, added May 9, 1961, P. L. 185, 53 PS §46269; and clause 56, sec. 702, of the Second Class Township Code of May 1, 1933, P. L. 103, added June 21, 1957, P. L. 358, 53 PS §65756.

industrial development agencies have received funds, pursuant to the enabling legislation referred to in footnote 1, above, from the counties and municipalities in which they are located, and from the Commonwealth under the Industrial Development Assistance Law. This fact does not change the character of the industrial development agencies from private nonprofit corporations into "public bodies"; none of these agencies are instrumentalities of a municipal subdivision.

It is clear to us, therefore, that industrial development agencies, within the intendment of the Pennsylvania Industrial Development Authority Act and the Industrial Development Assistance Law, and as such agencies are now functioning, are not "public bodies" within the meaning of section 2 of the Pennsylvania Prevailing Wage Act, and that these agencies are not subject to the wage provisions of such act. We do not mean to intimate, however, that an industrial development agency could not be organized by a political subdivision of the Commonwealth which would meet the definitions of both the Pennsylvania Industrial Development Authority Act and the Industrial Development Assistance Law and also be classified as a "public body" within the meaning of the Pennsylvania Prevailing Wage Act.[2] In the final analysis this opinion is only intended for your general guidance, and a definitive answer as to whether a particular industrial development agency is subject to the Pennsylvania Prevailing Wage Act can only be given on a case-by-case basis.

We are of the opinion, therefore, and you are accordingly advised, that the Pennsylvania Industrial Development Authority is not subject to the provisions

---

[2] For example, see the recent amendment to section 4 of the Municipality Authorities Act of May 2, 1945, P. L. 382, the Act of August 7, 1961, P. L. 936, 53 PS §306, giving municipalities the power to form an authority for industrial development purposes.

of the Pennsylvania Prevailing Wage Act, and that private local nonprofit industrial development agencies, with the qualifications set forth above, are likewise not subject to the provisions of the Pennsylvania Prevailing Wage Act.

